United States District Court
Southern District of Texas
**ENTERED**
August 17, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAURICE J HOOD, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-14-1719 |
| | § | |
| DAVID McKINNON, *et al*, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff Maurice J. Hood ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 and the Texas Constitution against Fort Bend County, Detective David C. McKinnon, and John Does 1-10 (collectively, "Defendants").  Plaintiff alleges that Defendants violated his federal and state constitutional rights stemming from an investigation and prosecution for an October 8, 2009 home invasion and aggravated robbery.

Pending are Defendants' Motions to Dismiss (Docket Entry Nos. 31, 37, 38, 39).  After reviewing the motions, the responses, the replies, and the applicable law, the Court concludes as follows.

**I.      Background**

Plaintiff alleges the following facts in his Second Amended Complaint ("SAC")[1]:

On the morning of October 8, 2009, David Haye ("Haye") heard a knock at the door and saw through the peep-hole an individual he thought was a United Parcel Service ("UPS") delivery employee carrying a box and a clipboard.  As soon as Haye opened the door, the man

---

[1] *See generally* Plaintiff's Second Amended Complaint (SAC), Docket Entry No. 33, ¶¶ 22-75.  The background facts set forth here are Plaintiff's allegations in his pleadings, which the Court takes as true when considering a motion to dismiss.  *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002).

posing as a UPS employee ("Imposter" or "Second Assailant") and his accomplice forced their way into Haye's home.  Imposter held Haye at gunpoint in the living room while his accomplice, later identified as Ronnie Alvarra Alfred ("Alfred"), searched the house and discovered that Haye's infant daughter was asleep in the next room.  Alfred demanded money from Haye and threatened to kill Haye's daughter if Haye refused.  The robbers ordered Haye to lie face-down on the ground and pointed their handguns at Haye's chest.  Haye, believing he would be killed, fought the robbers, causing them to bleed.  The robbers again threatened to kill Haye's infant daughter if he kept fighting, causing Haye to surrender and give Alfred $500 cash.  The robbers fled in a 2001 Buick Century ("get-away vehicle"), and Haye called the police.

Fort Bend County Sheriff's Deputies Christina Saucedo ("Saucedo") and Fernando Flores ("Flores") arrived at the scene, entered, cleared the residence, and summoned medics for Haye. Fort Bend County Sheriff's Detectives David McKinnon ("McKinnon") and Dalia Simons ("Simons") arrived at the scene about an hour later.  Haye told the detectives and the deputies that Alfred was a black man with medium skin, about 5'7" tall, and thin build, while the Second Assailant, dressed like a UPS delivery employee and carrying a box and a clip board, was a black man with dark skin, about 6'3" tall, and a muscular build.  Haye also reported that the two assailants had fled in the get-away vehicle.

Plaintiff alleges that Simons observed blood at the scene and found a windshield repair invoice bearing identifying information about the get-away vehicle, which was believed to be the paper the robbers used for their UPS delivery clipboard.  Simons was able to identify the vehicle and reported it to police dispatch from the information on the invoice.  Crime Scene Investigators Kimberly Oreskovich ("Oreskovich") and James Tabares ("Tabares") allegedly collected

evidence at Haye's house, but did not check Haye's person for physical evidence left by the robbers. Later that same afternoon, Fort Bend Sheriff's Patrol deputies stopped the get-away vehicle, detained the driver, searched the vehicle, and notified Simons.

Simons and Oreskovich allegedly arrived at the location of the vehicle and driver, and Oreskovich took blood smear evidence from the interior of the vehicle. Simons impounded the vehicle, and the next day Investigator Jeremy Goodrich ("Goodrich") searched the vehicle for evidence and found two latent prints on the exterior of the vehicle. Goodrich also took buccal swab evidence from Haye.

On or around October 12-14, 2009, McKinnon and Simons learned that Alfred borrowed the get-away vehicle shortly before the robbery. Haye identified Alfred from a photographic line-up for eyewitness identification provided by McKinnon. Haye later confirmed that Alfred was one of his assailants when Simons showed him two other photographs of Alfred. Haye then filled out a "Photo Line-Up Affidavit" and hand wrote that he was 100% sure that Alfred was one of the individuals who had robbed him. Alfred was arrested on October 15, 2009 and charged with the Haye home invasion as well as another aggravated robbery unrelated to Haye. Alfred did not identify who his accomplice was for the Haye home invasion.

On or around January 6, 2010, Goodrich processed the latent prints he had obtained off the get-away vehicle, and one of them reportedly belonged to Plaintiff Maurice Hood ("Plaintiff"). Goodrich reported this finding to McKinnon, who located Plaintiff's license information, found that Plaintiff's race, height, and build were similar to Haye's description of the Second Assailant, and that Plaintiff was one of Alfred's acquaintances. Plaintiff claims that McKinnon formed a hunch that Plaintiff might be the Second Assailant from these facts.

Plaintiff further claims that McKinnon prepared a six-person photographic line-up for eyewitness identification with Plaintiff's driver's license picture as one of the photographs, and showed the photo line-up to Haye.  Haye told McKinnon that none of the people in the line-up was the Second Assailant.  McKinnon then showed Haye another photograph of Plaintiff and told him that Plaintiff's palm print was found on the get-away vehicle, Plaintiff was a known associate of Alfred, and that he was the Second Assailant.

Plaintiff additionally alleges that Haye told McKinnon that (1) he got a good look at the robbers because they did not wear masks; (2) Plaintiff had lighter skin and was fatter than the Second Assailant; and (3) the Second Assailant was not in the photograph provided.  McKinnon allegedly insisted that the man in the photograph [Plaintiff] was the Second Assailant.  Haye allegedly became exhausted from McKinnon's efforts and eventually filled out a "Photo Line-Up Affidavit" supplied by McKinnon and printed on the affidavit that Plaintiff was "the big guy who robbed me" and printed that "number 5 [Plaintiff] looks like the big guy that robbed me" on the Fort Bend County Sheriff's Office Photo Spread.  Plaintiff claims that McKinnon went to Haye with the intent to convince Haye that Plaintiff was the suspect and that McKinnon refused to accept Haye's response that Plaintiff was not the one who robbed him.

On January 11, 2010, McKinnon wrote in his incident report that Haye had positively identified Plaintiff as being the taller suspect who robbed and pistol-whipped Haye inside his home.  McKinnon did not include Haye's earlier negative identification of Plaintiff.  McKinnon prepared an arrest warrant affidavit for Plaintiff for the offense of aggravated robbery and presented this affidavit to the Honorable R.H. Bielstein, who issued Arrest Warrant #011110-1 for Plaintiff's arrest and set the bond amount for $100,000.

4

On January 13, 2010, Fort Bend County's Investigator Michael Kulbricht ("Kulbricht") received the arrest warrant, and on January 22, 2010 Kulbricht and unnamed Houston Police Department ("HPD") officers converged on Plaintiff's last known residence and repeatedly knocked on the door at around 1:30 a.m.  Plaintiff claims they kicked the door in and sent an HPD officer with an HPD dog to secure Plaintiff in a bedroom.  The police dog allegedly located Plaintiff and bit him on his right thigh.  Kulbricht handcuffed Plaintiff and took him into custody.  Plaintiff alleges that the handcuffs were too tight and caused him pain and temporary nerve damage.

On June 10, 2010, while Plaintiff was awaiting trial, McKinnon met with Plaintiff and explained that witnesses had identified him as the Second Assailant, that his palm print was found on the get-away car, and that he should confess to the home invasion so that he could receive a lighter sentence than he would get if they proceeded to trial.  Plaintiff denied that he was involved in the home invasion robbery and maintained that he had never been involved in any home invasion robberies.  Plaintiff alleges that on that occasion McKinnon informed him that "I'm the detective.  I can do anything I want."

On October 24, 2012, the jury was empaneled for Plaintiff's trial.  Haye asked the prosecutor if he could see the accused because he had never seen the person who was charged with the crime.  Upon seeing Plaintiff, Haye indicated to the prosecutor that Plaintiff was not the Second Assailant.  The prosecutor moved to dismiss, and the case was dismissed against Plaintiff.  Plaintiff alleges that he was in custody for 1006 days, 817 of which were in detention while for the other 189 he was released on bond.

Plaintiff alleges the following causes of action against various defendants: (1)

manufactured probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution through section 1983, against McKinnon and Doe defendants; (2) malicious prosecution in violation of the Fourth Amendment through section 1983, against McKinnon and Doe defendants; (3) failure to train or supervise investigators in the collection, testing, and suspect exoneration with DNA evidence in violation of the Fourteenth Amendment through section 1983, against Fort Bend County ("County") and Doe defendants; (4) failure to train or supervise investigators in adequate lineups in violation of the Fourteenth Amendment through section 1983, against Fort Bend County ("County") and Doe defendants; and (5) manufactured probable cause in violation of the Texas Constitution against McKinnon and Doe Defendants.[2]

For relief, Plaintiff seeks actual and compensatory damages against all defendants, punitive damages against individual defendants only, damages from the County pursuant to *respondeat superior* liability and joint and several liability; pre- and post-judgment interest, attorney's fees, costs of suit, and all other relief to which Plaintiff is entitled.[3]

Defendants have moved to dismiss, contending that (1) Plaintiff's federal and state claims are barred by the statute of limitations; (2) there is no valid cause of action for money damages for violations of the due course of law clause of the Texas Constitution; and (3) Plaintiff's state law claims are barred by governmental immunity and the election of remedies.

## II.    Standards of Review

### A.    Prisoner Litigation Reform Act Standard

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA")

_____

[2] *See* SAC at ¶¶ 76-117.

[3] *Id.* at ¶¶ 121-125.

because Plaintiff proceeds *in forma pauperis* and was an inmate at the Brazoria County Jail at the time he filed this complaint.[4]   *See* 28 U.S.C. § 1915A (c).   The PLRA requires that the district court review a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.   28 U.S.C. § 1915A (a). On review, the Court must identify cognizable claims or dismiss the complaint or any portion thereof, if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist." *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998)).   A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002).   Under that standard, courts must assume that plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.   *Id.* (citations omitted).

### B.      Rule 12(b)(6)

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which

---

[4] *See* Docket Entry No. 1 (prisoner civil rights complaint); Docket Entry No. 7 (motion/application to proceed *in forma pauperis*); Docket Entry No. 8 (prisoner trust fund account statement); Docket Entry No. 9 (Order granting motion to proceed *in forma pauperis*).

relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  *Id.*

In considering a motion to dismiss under Rule 12(b)(6), the district court construes the allegations in the complaint favorably to the pleader and accepts as true all well-pleaded facts in the complaint.  *La Porte Construction Co. v. Bayshore Nat'l Bank of La Porte, Tex.*, 805 F.2d 1254, 1255 (5th Cir. 1986).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (citations and internal footnote omitted).

### C.  Statute of Limitations

Limitations is an affirmative defense.  *See* FED. R. CIV. P. 8(c)(1). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *see also Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986); *White v. Padgett,* 475 F.2d 79, 82 (5th Cir. 1973)

(holding that claim is "subject to dismissal under Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the complaint.").

"The limitations period for a claim brought under section 1983 is determined by the general statute of limitations of the forum state." *Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (5th Cir. 2005). In Texas, the applicable statute of limitations is two-years. *Id.* Federal law determines when a cause of action accrues for purposes of section 1983. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, a claim accrues and 'the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001), *cert. denied,* 534 U.S. 820 (2001)).

A district court's dismissal under Rule 12(b)(6) is reviewed *de novo*, but its determination that the plaintiff has not pled facts to justify equitable tolling is reviewed for an abuse of discretion. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015).

## III.   Discussion

### A.   Doe Defendants

Plaintiff states generally that John Does 1-10 "are individuals whose true identities are presently unknown, who participated, facilitated, or had a duty to prevent the civil rights violations described herein . . . ." SAC ¶ 12. The pleadings reflect that Plaintiff did not add John Does 1-10 to this lawsuit until June 8, 2015. More than two full years after Plaintiff filed his original complaint, Plaintiff has not named any of the Doe defendants and has not stated facts to indicate what each of them did or how they may be personally involved in this case.

Assuming that Plaintiff's causes of action did not accrue until the charges against him were dismissed on October 22, 2012, the statute of limitations expired on October 22, 2014, several months before Plaintiff even added the Doe defendants.   Further, to the extent that Plaintiff seeks to toll the statute of limitations by asserting a discovery date in 2015, Plaintiff filed a *pro se* complaint signed on June 14, 2014, wherein he states that "It was discover[ed] by my lawyer after trial been dismiss[ed] that [Detective McKinzie, now known as McKinnon] coerce[d] the victim to accuse and point me out in a photo line up."   Docket Entry No. 1 at 5. Thus, by June 14, 2014 at the latest, Plaintiff was aware of facts that would have, or at least should have, alerted him that he had suffered an injury that would lead a reasonable person to investigate further.  *See King-White*, 803 F.3d at 762 (citing *Piotrowski*, 237 F.3d at 576); *see also Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1223 (2013) (quoting *Merck & Co. v. Reynolds,* 559 U.S. 633, 653, 130 S. Ct. 1784, 1793 (2010)) ("In determining what a plaintiff should have known, we ask what facts a reasonably diligent plaintiff would have discovered." (internal quotation marks omitted)).

The pleadings indicate on their face that the statute of limitations ran for the Doe defendants long before Plaintiff added them to the lawsuit, regardless of which legal theories for recovery apply.  *See Whitt v. Stephens County*, 529 F.3d 278, 282-83 (5th Cir. 2008) (affirming the dismissal on limitations grounds where John Does were not named within the limitations period); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (substitution for "John Doe" did not relate back for purposes of limitations); *but see Green v. Doe*, 260 F. App'x 717, 2007 WL 4561113 (5th Cir. 2007) (not selected for publication) (finding equitable tolling appropriate where district court had abused its discretion when it denied inmate's discovery motions that

were filed within the limitations period).  Plaintiff did not file any motions to discover the identities of the Doe defendants within the limitations period and has not named them.  Not only has Plaintiff failed to name the John Does after two years, but also he failed to add them as John/Jane Does within the limitations period as part of his original complaint.  Where, as here, a plaintiff proceeds *in forma pauperis*, claims that are plainly barred by the applicable statute of limitations are subject to dismissal by the Court *sua sponte* under 28 U.S.C. § 1915.  *See Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990).  Because Plaintiff has failed to prosecute this case with regard to the Doe defendants and added them to this lawsuit well after the limitations period had run, Plaintiff's claims against the Doe defendants are dismissed as barred by limitations.

### B.      Federal Claims

#### 1.      Legal Standard – 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a "person" acting under color of state law.  *Id.*  at 315.

A plaintiff seeking relief under section 1983 must establish two elements: (1) that the conduct complained of was committed under color of law, and (2) that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1998)).

Municipalities and other bodies of local government are "persons" within the meaning of

section 1983.  *Monell v. Department of Social Services,* 436 U.S. 658, 690 (1978). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).  The bar on vicarious liability means that the municipality can only be liable where the municipality itself causes the constitutional violation at issue.  *Monell,* 436 U.S. at 694.  A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Id.* at 690-91.

To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policymaker, (b) an official policy [or custom or widespread practice], and (c) a violation of constitutional rights whose "moving force" is the policy or custom.  *Piotrowski,* 237 F.3d at 578 (a plaintiff must show that the unconstitutional conduct is attributable to the municipality through some official custom or policy that is the "moving force" behind the constitutional violation) (*citing Monell,* 436 U.S. at 694). The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'"  *Okon v. Harris County Hospital District,* 426 F. App'x 312, 316 (5th Cir. 2011), *quoting Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (*en banc*), *cert. denied,* 472 U.S. 1016 (1985).  When a policymaker commits the act at issue, that act may establish the policy if the policymaker must be "unconstrained by policies imposed from a higher authority." *Okon,* 426 F. App'x at 316 (citing *Hampton Co. v. Nat'l Sur. LLC v. Tunica County*, 543 F.2d 221, 227 (5th Cir. 2008)).

It is not sufficient for a plaintiff to allege, without elaboration, a policy or a custom and its relationship to the underlying constitutional violation; instead the plaintiff must plead specific facts. *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire,* 957 F.2d at 1278; *see also Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) ("'[I]solated unconstitutional actions by municipal employees will almost never trigger liability.'") (quoting *Piotrowski*, 237 F.3d at 578).

Regarding a custom or a failure to train, "[t]he governing body of the municipality or an official to whom that body has delegated policy-making authority must have actual or constructive knowledge of such a custom." *Okon,* 426 F. App'x at 316 (citing *Bennett*, 735 F.2d at 862). "Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information," while constructive knowledge "may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (*en banc*), *cert. denied*, 472 U.S. 1016 (1985). If policymakers do not have notice that a source of training is deficient in a specific respect, they "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson,* 563 U.S. 51, 62 (2011).

### 2. Federal claims against McKinnon – Counts I and II

Plaintiff alleges the following claims against McKinnon: (1) manufactured probable

cause in violation of the Fourth and Fourteenth Amendments and (2) malicious prosecution in violation of the Fourth Amendment.  In particular, Plaintiff alleges that he was arrested pursuant to an arrest warrant and held for over two years in prison while the County prosecuted him for a crime he did not commit, all based on the false or fabricated testimony and evidence provided by McKinnon.  Plaintiff alleges further that during the time he was held over for trial, McKinnon tried to persuade him to plead guilty to receive a lighter sentence, presenting Plaintiff with the evidence which the County had in against Plaintiff, which Plaintiff alleges was tainted by McKinnon.  Plaintiff also claims that McKinnon stated that McKinnon could do whatever he wanted because he was the detective.  Plaintiff alleges that he was held over for trial, prosecuted wrongfully based on a false identification procured by McKinnon, and that McKinnon participated in his prosecution after Plaintiff was held over for trial.  Taken together, Plaintiff asserts that McKinnon subjected him to an unreasonable seizure in violation of the Fourth Amendment in connection with a malicious prosecution.

### a.    "Malicious Prosecution" claims under section 1983

In 1994, the Supreme Court in *Albright v. Oliver* declined to recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.  510 U.S. 266, 268 (1994) (plurality decision).  Albright had turned himself in upon learning that there was a warrant for his arrest for the sale of a substance which looked like an illegal drug.  *Id.*  Officer Oliver, a police detective, testified at a preliminary hearing that Albright sold the look-alike substance to a police informant.  *Id.* at 269.  Albright was charged and released after posting bond, and the case was later dismissed because Albright's action did not constitute a crime under Illinois law.  *Id.* at 268-69.  Albright sued Oliver and the

14

city pursuant to section 1983, asserting a substantive due process right under the Fourteenth Amendment to be free from malicious prosecution.  *Id.*

Noting that "the extent to which a claim of malicious prosecution is actionable under § 1983 is one 'on which there is an embarrassing diversity of judicial opinion,'" the high Court issued a plurality opinion in which four justices agreed that "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim must be judged."  *Id.* at 270-71 & n.4.  *Albright* did not elucidate the particulars of a section 1983 Fourth Amendment claim connected to a malicious prosecution, however, leading to a variegated landscape across the circuit courts as to the viability of such claims.

In 2003, the Fifth Circuit issued an *en banc* decision in which it noted the several standards from sister circuits and concluded that "[C]ausing charges to be filed without probable cause will not *without more* violate the constitution.  So defined, the assertion of malicious prosecution states no constitutional claim."  *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) (emphasis added).  *Castellano* further held that "no such freestanding constitutional right to be free from malicious prosecution exists" and that any pleading asserting a section 1983 claim based on malicious prosecution must clearly identify the constitutional violations asserted. *Id.* at 945.  *Castellano* did not, howevr, foreclose all section 1983 cases where a claimant alleges that he was maliciously prosecuted, noting:

> It is equally apparent that additional government acts that may attend the initiation of a criminal charge could give rise to claims of constitutional deprivation. *The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued.* Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983.  Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

15

*Id.* at 953–54 (emphasis added).  Thus, to the extent that Plaintiff labels his claim as one for "malicious prosecution" and invokes *Texas state law elements* for that claim, such a claim "invites confusion" and is not properly brought under section 1983.  *Id.*  On the other hand, to the extent that Plaintiff brings his claim regarding his prosecution pursuant to the Fourth Amendment, he has alleged government actions that attended his prosecution that give rise to a claim for "violation of rights locatable in the constitutional text," as set forth below.  *Id.*

### b.      Fourth Amendment Claim

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation[.]"  U.S. CONST. amend. IV.  "[A] Fourth Amendment seizure [occurs] .   .   . when there is a governmental termination of freedom of movement *through means intentionally applied*."  *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989)  (emphasis in original); *see also Albright,* 510 U.S. at 274 (plurality opinion) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.").  Relevant here, "[p]rolonged pretrial incarceration without probable cause .  .  . constitutes a cognizable deprivation of liberty under the Fourth Amendment." *Whittington v. Maxwell*, 455 F. App'x 450, 458 (5th Cir. 2011).

Post-*Castellano,* the Fifth Circuit has found that a claimant stated, or could state, a Fourth Amendment section 1983 claim connected to a malicious prosecution when that alleged wrongful prosecution was coupled with prolonged detention (an unreasonable seizure).  For example, in *Whittington*, the claimant was arrested pursuant to legal process and bail was set so high that he could not pay it.  455 F. App'x at 453.  As a result, Whittington spent over 50 days

in jail.  *Id.*  The judge, prosecutor, and sheriff had engaged in improper *ex parte* communications regarding the claimant's criminal prosecution, and, after two years, the charges against Whittington were dismissed.  *Id.*  After the charges were dismissed, Whittington sued for, among other claims, malicious prosecution under the Fourth Amendment, alleging that the sheriff's office had manufactured the charges against him to carry out a political vendetta.  *Id.*

The *Whittington* defendants argued that the Fourth Amendment malicious prosecution claim was barred under *Castellano* as a freestanding malicious prosecution claim.  *Id.* at 457.  Rejecting that argument, the Fifth Circuit held, "[i]n connection with his malicious prosecution claim, Whittington has alleged a Fourth Amendment claim for an illegal seizure—based on his detention for over fifty days in jail on allegedly fabricated charges."  *Id.*

Similarly, in *McMillan v. Richmond*, the Fifth Circuit did not foreclose the claimant's section 1983 Fourth Amendment claim connected to a malicious prosecution, allowing McMillan to replead that claim.  400 F. App'x 878, 881 (5th Cir. 2010).  McMillan had been in a fight with his girlfriend at the home both of them shared and she called the police.  *Id.* at 879.  When the police arrived, McMillan explained that he resided at the home, he had a key, and could show them where his tools were.  *Id.* at 879-80.  The officer at the scene took away McMillan's key, tightly handcuffed him, and arrested him for burglary with intent to commit an aggravated assault with a deadly weapon.  *Id.* at 880.  Even though the girlfriend submitted an affidavit the same morning retracting her "false allegations," McMillan was kept in jail for 12 days.  *Id.*  Bail was set by the magistrate on the basis of the police officer's probable cause affidavit, which used the girlfriend's version of events which she had earlier retracted as false.  *Id.*  The charges were dropped two days after McMillan posted bail and was released.  *Id.*

McMillan filed his lawsuit a couple days after the statute of limitations expired for false arrest claims but before the limitations period expired for a section 1983 Fourth Amendment claim connected to a malicious prosecution. *Id.* The Fifth Circuit affirmed the dismissal of the false arrest claim as barred by limitations and remanded the case to the district court "to permit the plaintiff to amend his complaint to state his best § 1983 claim based on malicious prosecution." *Id.* The Fifth Circuit did not reject his section 1983 Fourth Amendment claim based on malicious prosecution as a matter of law where the plaintiff alleged he was subjected to prolonged detention without probable cause.

On the other hand, the Fifth Circuit has rejected Fourth Amendment claims connected to malicious prosecution where there was probable cause for the arrest, *see, e.g., Travis v. City of Grand Prairie*, --- F. App'x ----, 2016 WL 3181392, at *2 (5th Cir. June 7, 2016); *Cuadra v. Houston Indep. Sch. District*, 626 F.3d 808, 813 (5th Cir. 2010); *Carter v. Godfrey*, 108 F. App'x 850, 852 (5th Cir. 2004), or where no prolonged detention accompanied the allegedly wrongful prosecution, *see, e.g., Cuadra*, 626 F.3d at 813; *Bloss v. Moore*, 269 F. App'x 446, 448 (5th Cir. 2008). Indeed, in *Travis v. City of Grand Prairie*, the Fifth Circuit recently reiterated that a "freestanding § 1983 malicious prosecution claim fails as a matter of law." 2016 WL 3181392, at *2 (citing *Cuadra*, 626 F.3d at 812). The Fifth Circuit also stated in *Travis*:

> We have recognized that the Fourth Amendment's protections extend to preclude unreasonable seizure throughout the pretrial events of a prosecution, although we have discussed it as a Fourth Amendment claim and have rejected the notion that a freestanding malicious prosecution claim absent a Fourth Amendment violation is cognizable under § 1983.

*Id.* at *2 n.2.[5]

---

[5] The Fifth Circuit also noted in *Travis* that "the Supreme Court has granted a petition for a writ of certiorari to review the Seventh Circuit's holding in *Manuel v. City of Joliet*, 590 F. App'x 641 (7th Cir. 2015), *cert. granted*, 136 S. Ct. 890 (2016), that the Fourth Amendment does not give rise to a claim for malicious prosecution." *Id.*

In *Travis*, the Fifth Circuit found that the plaintiff had not alleged facts "that, if true, show that the officers lacked probable cause to seize and/or arrest him." *Id.* at *3.  There, the assault victim had specifically named Travis as the perpetrator of the crime against her. *Id.*  The Fifth Circuit held that this was sufficient to establish probable cause for Travis's arrest, even though direct exculpatory evidence was allegedly known to the officers. *Id.*

Here, in contrast, Plaintiff alleges that McKinnon coerced or manipulated Haye into *changing* his initial negative identification of Plaintiff to a positive identification in order to fabricate the probable cause needed to arrest Plaintiff.   Specifically, Plaintiff claims that McKinnon manufactured probable cause when he allegedly: (1) ignored Haye's negative identification of Plaintiff; (2) knew that Haye did not believe that Plaintiff was the Second Assailant; (3) used his police authority and inside information about the investigation to weaken Haye's confidence in his own eyewitness memory; and (4) caused Haye to sign the 'Photo Line-Up Affidavit' form and 'Fort Bend County Sheriff's Office Photo Spread' contrary to Haye's negative identification of Plaintiff, all the for purpose of representing to the magistrate that there was probable cause to believe that Plaintiff was the Second Assailant.  SAC ¶¶ 58, 78.  Plaintiff also alleges that his arrest on January 22, 2010 was *pursuant to an arrest warrant* for which McKinnon prepared an affidavit based on "manufactured probable cause."  SAC ¶¶ 59, 84.   At this stage of the proceedings, Plaintiff has alleged facts to show that McKinnon lacked probable cause for the arrest warrant, and McKinnon does not argue otherwise in his motion to dismiss.

McKinnon relies on *Cuadra* to argue that Plaintiff has no section 1983 claim, but in *Cuadra*, the Fifth Circuit noted that the plaintiff did not raise a fact issue on probable cause or unreasonable seizure.  626 F.3d at 813.  The Court also found that his "freestanding" malicious prosecution claim was subject to dismissal under *Castellano* and his Fourteenth Amendment

claim was foreclosed by *Albright*. *Id.* at 812-13, 814.

Unlike *Cuadra*, Plaintiff alleges an unreasonable seizure—a prolonged detention without probable cause— pursuant to legal process.  Plaintiff alleges that he was held for 817 days, far longer than *Whittington*'s "prolonged detention" of 50 days,[6]  pursuant to charges that were allegedly the result of McKinnon's manufactured probable cause based on a false identification by Plaintiff.    When an individual is wrongfully arrested and detained without legal process, the United States Supreme Court has held that the cause of action so stated accrues once legal process has been issued, analogizing the cause of action under section 1983 as similar to common law false arrest and false imprisonment.  *Wallace*, 549 U.S. at 384.  On the other hand, when an individual is wrongfully held *pursuant to legal process*—here, an arrest warrant—the cause of action is likened to the "entirely distinct" tort of malicious prosecution.  *Id.* at 389-90.

Plaintiff does not allege that he was held without a warrant like the claimant in *Wallace*.  Rather, his Fourth Amendment claim is analogous to the "entirely distinct" tort of malicious prosecution because he was arrested pursuant to a warrant and was thus held pursuant to legal process.  *Id.*  Unlike the plaintiff in *Wallace*, who abandoned his malicious prosecution-type claim on appeal to the Supreme Court, Plaintiff asserts that he was arrested pursuant to a warrant based on fabricated evidence and that he was charged and held over for trial *for years* based on that allegedly false legal process.  *Wallace* by its express terms did not reach the scenario alleged here.  *See id.* at 390 n.2 ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983 . . . and we do not do so here.").   Therefore, McKinnon's reliance on *Wallace* for an accrual date in January 2010 for Plaintiff's section 1983 Fourth Amendment claim connected to a malicious prosecution is unavailing.

---

[6]  *See Whittington*, 455 F. App'x at 458 n.7 (discussing Supreme Court holdings regarding Fourth Amendment violations involving prolonged detention without probable cause).

In sum, Plaintiff alleges a Fourth Amendment claim connected to his prosecution because he complains of prolonged detention without probable cause pursuant to legal process.  At the pleading stage, Plaintiff has sufficiently pled facts to survive dismissal on his Fourth Amendment claim.  Because his Fourth Amendment claim is based on being held *pursuant to legal process* as the result of allegedly fabricated probable cause, it did not accrue until the charges against him were dismissed in October 2012.  *See Heck v. Humphrey*, 512 U.S. 477, 489 (1994) ("The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. . . . Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, . . . so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated."); *accord Castellano*, 352 F.3d at 659 ("Justice Scalia's opinion in *Heck v. Humphrey* answers any question of limitation in the overwhelming percentage of cases"). Accordingly, Plaintiff's Fourth Amendment claim connected to his malicious prosecution is not barred by the statute of limitations.

### c.      Fourteenth Amendment Claim

Plaintiff purports to bring a claim pursuant to the Fourteenth Amendment for "manufactured probable cause."  To the extent that Plaintiff intended to state a constitutional claim for malicious prosecution under the Fourteenth Amendment, clear Supreme Court precedent in *Albright* constrains this Court to reject this claim.  *See Albright*, 510 U.S. at 271 ("We hold that it is the Fourth Amendment, and not substantive due process, under which petitioner['s] claim must be judged."); *accord Cuadra*, 626 F.3d at 814. Because the

complained-of harm was allegedly caused by a violation of rights locatable in constitutional text, specifically, in the Fourth Amendment, *Albright* forecloses his Fourteenth Amendment claim. 510 U.S. at 271.[7]  Accordingly, Plaintiff's claims under the Fourteenth Amendment will be dismissed.

### 3.    Federal Claims against Fort Bend County

Plaintiff sues Fort Bend County ("County") and unspecified Doe defendants for the failure to train investigators to exonerate the innocent (Count III) and to conduct proper police line-ups (Count IV) in violation of the Fourteenth Amendment.  SAC ¶¶ 86-112, Counts III & IV.  He alleges that if County had trained its employees properly and the investigators had tested the DNA in the apartment, they would have been able to exclude Plaintiff.  He further alleges that if the investigators had been trained in conducting proper line-ups the identification would not have been tainted and he would not have been arrested.

"The first step in any [section 1983] claim is to identify the specific constitutional right allegedly infringed."  *Albright*, 510 U.S. at 270.  To establish liability for failure to train, a plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  *Mesa v. Prejean,* 543 F.3d 264, 274 (5th Cir. 2008) (internal quotation marks and citation

---

[7] *Cf. Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015) (finding that plaintiff could proceed on his Fourteenth Amendment claim where the Fourth Amendment claim was not available to him).  In *Cole*, in order to avoid the consequences of using deadly force against a troubled minor teenager, the police allegedly engaged in a cover-up, fabricating evidence to frame the teen for assault on a police officer.  *Id.* at 755-56.  The Fifth Circuit held that the plaintiff had stated a substantive due process claim under the Fourteenth Amendment based on the egregious circumstances in that case.  *Id.* at 767.  *Cole* is distinguishable from this case on its facts; there is no allegation here that McKinnon made up a crime (it is undisputed that Haye was actually robbed at gunpoint) or that McKinnon sought to deflect guilt or liability from himself onto Plaintiff in order to avoid the consequences of his bad acts.

omitted). To satisfy deliberate indifference, the plaintiff must "usually must demonstrate a pattern of violations" and show that the defendant's actions were "obviously likely to result in a constitutional violation." *Estate of Davis ex rel. McCully v. City of N Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (internal quotation marks and citations omitted). The Fifth Circuit has stressed that the pattern of violations must be of *"similar incidents in which the citizens were injured." Id.* at 382 (emphasis in original) (internal quotation marks and citations omitted).

To support his claims against the County, Plaintiff alleges that his Fourteenth Amendment rights were violated when the County failed to train their investigators (1) to exonerate the innocent and (2) to ensure that the photo line-ups are conducted properly. Plaintiff fails to state valid claims against the County because (1) he states no viable constitutional violation under the Fourteenth Amendment and (2) he does not plead facts that indicate that a lack of specific training in these areas was due to the County's deliberate indifference to its citizens' constitutional rights.

First, Plaintiff's Fourteenth Amendment claims fail as a matter of law. As set forth above, Plaintiff's claims regarding his alleged unlawful prosecution find their moorings in the Fourth Amendment, not the Fourteenth. *See Albright*, 510 U.S. at 271; *accord Castellano*, 352 F.3d at 953 ("Causing charges to be filed without probable cause will not without more violate the Constitution."). Furthermore, the failure to conduct a thorough investigation does not state a constitutional claim. *See Baker v. McCollan*, 443 U.S. 137, 145 (1979) ("Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person."); *see also Shields v. Twiss*, 389 F.3d 142, 150-51 (5th Cir. 2004) (allegations of an "unreasonable investigation" did not state a constitutional claim under section 1983). Thus, contrary to Plaintiff's assertions, the County (and Does) did not have a continuing

duty to exonerate the innocent and to ensure that all investigations eliminate any and all possibility of arresting and holding an innocent person over for trial.  *See Baker*, 443 U.S. at 145.

Second, Plaintiff does not plead facts that would show that the County failed to train its investigators in deliberate indifference to the constitutional rights of its citizens.  Without elaboration, Plaintiff generally alleges that it is "highly predictable" that innocent citizens will be convicted and that citizens are "frequently convicted and later determined to be innocent," but Plaintiff gives no specific examples where this has happened in Fort Bend County to establish a pattern of violations.  *Estate of Davis*, 406 F.3d at 381.  Additionally, Plaintiff has alleged no other incidents in which other citizens were similarly injured so as to support Plaintiff's conclusory claim that the County knew about the deficient training in investigative procedures and did nothing.  *Id.* at 382; *Connick,* 563 U.S. at 62.  Because Plaintiff fails to state an underlying constitutional violation under the Fourteenth Amendment against the County (and Does) and fails to state facts to show deliberate indifference, his claims under section 1983 against the County (and Does) for failure to train (Counts III and IV) will be dismissed.

### C.     State Law Claim under the Texas Constitution

According to Plaintiff, he asserts a "***sole*** state law claim of manufactured probable cause pursuant to the Texas Constitution," and asserts no other state law claims.  Docket Entry No. 41 (Response) at 11 (emphasis added); SAC ¶¶ 113-117 (Count V).  He seeks money damages for this claim against McKinnon and Does in their individual capacities.  Response at 6; SAC ¶ 125.

"Generally, there is no private cause of action against a governmental entity or its officials for money damages relating to alleged violations of Texas constitutional rights." *Donohue v. Dominguez*, 486 S.W.3d 50, 56 (Tex. App.— San Antonio, Jan. 13, 2016, pet. denied) (citing *City of Arlington v. Randall,* 301 S.W.3d 896, 906–07 (Tex. App.—Fort Worth

2009, pet. denied); *Tex. A & M Univ. Sys. v. Luxemburg,* 93 S.W.3d 410, 425 (Tex. App.—

Houston [14th Dist.] 2002, pet. denied) (op. on reh'g); *Univ. of Tex. Sys. v. Courtney,* 946

S.W.2d 464, 468–69, 471 (Tex. App.—Fort Worth 1997, writ denied)).  "[O]nly if the language

of the specific provisions involved clearly implies" a private action for damages does the Texas

Constitution create one.  *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004).

Although the Texas Supreme Court appears not to have squarely addressed whether there

is a private cause of action under the due course of law clause, numerous appellate courts,

applying the reasoning the Texas Supreme Court employed in *Beaumont v. Boullion*, 896 S.W.2d

143 (Tex. 1995), have concluded that the Texas Constitution does not provide a private cause of

action for money damages for violations of the due course of law clause.  *See Univ. of Texas Sys.

v. Courtney*, 946 S.W.2d 464, 469 (Tex. App. —Fort Worth 1997, writ denied) (finding no

historical or textual basis to indicate that the Texas Constitution's due process provision implies

a separate cause of action for damages) (citing Tex. Const. art. I, § 19; *Arrington v. County of

Dallas,* 970 F.2d 1441, 1447 (5th Cir.1992));  *Donohue*, 486 S.W.3d at 56 (holding that the due

course of law, unreasonable search and seizure, and cruel and unusual punishment clauses of the

Texas Constitution do not "imply a private right of action for damages against the governmental

unit that would exist apart from the Texas Tort Claims Act") (citing *Courtney*, 946 S.W.2d at

471; *City of Webster v. Myers*, 360 S.W.3d 51, 60 (Tex. App.—Houston [1st Dist.] 2011, pet.

denied)); *Jefferson Cty. v. Nguyen*, No. 09-13-00505-CV, 2015 WL 4597560, at *19 (Tex.

App.—Beaumont July 31, 2015, no pet.) ("A party may not bring a claim for money damages

under the Texas Constitution's due process provision.") (citing *Smith v. City of League City,* 338

S.W.3d 114, 127 (Tex. App.–Houston [14th Dist.] 2011, no pet.); *Courtney*, 946 S.W.2d at 471).

The Court finds the above cases from the Texas intermediate appellate courts persuasive.

Accordingly, Plaintiff's state law claim for damages for manufactured probable cause pursuant to the Texas Constitution will be dismissed for failure to state a claim.

## IV.    Conclusion and Order

Based on the foregoing, the Court **ORDERS** that:

1.      Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket Entry No. 31) is **DENIED as MOOT** as superseded by Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.

2.      All claims against the unnamed Doe defendants are **DISMISSED** as barred by the statute of limitations.

3.      Defendant's Motion to Dismiss (Docket Entry No. 37) is **GRANTED in part**, insofar as Plaintiff's state constitutional claims are **DISMISSED** for failure to state a claim; Plaintiff's Fourteenth Amendment claim against McKinnon is **DISMISSED** on the merits; and all of Plaintiff's claims against Fort Bend County are **DISMISSED** on the merits.

4.      Defendant's Motion to Dismiss (Docket Entry No. 37) is **DENIED in part** regarding Plaintiff's section 1983 claim against McKinnon under the Fourth Amendment for unreasonable seizure in connection with his prosecution.

5.      Defendants' Motions to Dismiss State Law Claims against the Individual Defendants (Docket Entry No. 38) and to Dismiss Fort Bend County (Docket Entry No. 39) pursuant to provisions in the Texas Civil Practice and Remedies Code are **DENIED as MOOT**.

The Clerk will send a copy of this Order to all parties of record.

SIGNED at Houston, Texas, this 16th day of August, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE